UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-80535-CIV-HUCK/O'SULLIVAN

NISSIM CORP.,

    Plaintiff,

v.

CLEARPLAY, INC.,

    Defendant.
_____/

## ORDER ON CLEARPLAY'S MOTION FOR SUMMARY JUDGEMENT

This matter is before the Court upon ClearPlay Inc.'s ("ClearPlay") Motion for Summary Judgment (D.E. #23), filed February 9, 2009. ClearPlay seeks summary judgment in its favor on Nissim Corp.'s ("Nissim") complaint for patent infringement. Nissim's complaint alleges that ClearPlay's DVD players, including the "427 Player," infringe four of Nissim's patents.[1] Nissim, while conceding that the parties' 2005 license agreement (the "License Agreement") is still in effect for purposes of this motion, argues that ClearPlay does not have a license "to implement the industry-standard digital video disc ('DVD') specifications ('DVD Specifications')." (D.E. #36 at 2.)

ClearPlay argues it is entitled to summary judgment because Nissim cannot, as a matter of law, sue ClearPlay for infringement of patents that ClearPlay is licensed to use under the License Agreement. ClearPlay contends summary judgment is appropriate because (1) this Court purportedly held that "ClearPlay's products comply with the License Agreement" in the Enforcement Litigation,[2] (2) the License Agreement actually or implicitly grants ClearPlay the right to make the allegedly infringing DVD Players, (3) Nissim's claims are barred by collateral estoppel, (4) Nissim's claims are subject to mandatory arbitration under Section 4.6 of the

---

[1] These four patents (the '678, '945, '401 and '472 patents) were at issue in the 2004 infringement case. The 2004 case was dismissed with prejudice after the parties executed a licensing/settlement agreement in 2005.

[2] The Court retained jurisdiction in the 2004 infringement case to enforce the settlement agreement. *See generally Nissim Corp. v. ClearPlay, Inc. et al.*, 04-CV-21140 (S.D. Fla. 2004). In 2007, Nissim moved to enforce the settlement agreement, giving rise to what has been dubbed "the Enforcement Litigation." *See id.* at D.E. #442.

1

License Agreement, (5) Nissim's claims are barred by *res judicata*, and (6) ClearPlay is entitled to obtain a license to the DVD Specifications from Nissim.

On May 21, 2009, the Court granted the parties leave to file supplemental briefing on the sole issue of whether Nissim's complaint is barred by *res judicata*. (D.E. #73 at ¶¶ 3-5.) Accordingly, the Court will reserve ruling on that specific issue. However, for the reasons set forth below, and those explained at the May 21, 2009 hearing, the Court rejects all other bases for summary judgment advanced by ClearPlay.

1.      **Scope of Ruling in Enforcement Litigation**

This Court was not asked to hold and has not held that all aspects of ClearPlay's DVD Players comply with the License Agreement or that ClearPlay is entitled to make and sell its DVD Players as designed and manufactured. In the Enforcement Litigation, the Court held only that ClearPlay's CP-007-USB DVD Player ("007 Player") complied with the requirements of the License Agreement insofar as it (1) implemented the requisite four levels of explicitness and (2) incorporated or contained Modified ClearPlay Software despite using a removable USB memory stick. *See* 3/10/09 Order at ¶ 2, *Nissim Corp. v. ClearPlay, Inc. et al.,* 04-CV-21140 (S.D. Fla. 2004). These narrow findings do not establish that any ClearPlay DVD Player—any certainly not the 427 Player—complies with all aspects of the License Agreement. Furthermore, even if the Court had held that the 007 Player at issue in the Enforcement Litigation complied with the License Agreement in all respects—which the Court did not—that finding would not resolve the distinct question of whether ClearPlay's 427 Player (or even the 007 Player) *exceeds* the scope of the limited license granted to it in the License Agreement by implementing the DVD Specifications. Indisputably, the Court's orders in the Enforcement Litigation do not entitle ClearPlay to a judgment that the 427 Player does not infringe Nissim's patents by implementing the DVD Specifications.

2.      **Actual or Implied License**

Section 5.6 of the License Agreement expressly excludes ClearPlay from obtaining a license to implement the DVD Specifications. In relevant part, Section 5.6 states: "Any license grant or other authorization that may be provided by Nissim to ClearPlay . . . under this Agreement does not provide, directly, by implication, or otherwise, any license grant, or

authorization under the Patents-in-Suit to ClearPlay . . . necessary to practice any specifications for devices capable of playing optical discs, such as the DVD-Specifications and/or Blue-Ray or HD-DVD specifications." License Agreement, § 5.6. This "carve out" is unambiguous: whatever rights the License Agreement may grant ClearPlay, it does not grant ClearPlay a license to implement the DVD Specifications.

ClearPlay, however, contends that Section 5.6 does not mean what it says. ClearPlay argues that Section 5.6 was "intended to prevent ClearPlay from converting its license to make and sell Modified ClearPlay Players into a license to make *ordinary, non-filtering* DVD players without a separate DVD specifications license." (D.E. #51 at 7.) In support of this theory, ClearPlay cites Section 4.2, which grants ClearPlay a license "to make, have made, use, offer for sale, sell, lease, and/or otherwise dispose of Modified ClearPlay Players Sold . . . ." License Agreement, § 4.2. Incidentally, Section 4.2 is titled "***Limited*** License for Modified ClearPlay Players" (emphasis added) and is expressly subject to the "license exclusions contained in Section 5 . . . ." *Id.* Nevertheless, ClearPlay contends Section 4.2 broadly authorizes it to sell its DVD players, and that if Section 5.6 means ClearPlay does not have a license to implement the DVD Specifications (which it argues is necessary to execute its rights under Section 4.2), then ClearPlay cannot sell its DVD players, and Section 4.2 becomes "meaningless." (D.E. #51 at 8.) ClearPlay says the License Agreement must be read to give effect to all provisions and that its narrow reading of Section 5.6 is the only way to do so.

ClearPlay's argument falls short. As Nissim points out, ClearPlay could have had its 427 Player manufactured by a company with a license to implement the DVD Specifications, like ClearPlay apparently did with the RCA Player at issue in the 2004 infringement case, but chose not to do so. In other words, Section 4.2 is not meaningless because ClearPlay may sell its DVD Players subject to the qualifications set forth in the License Agreement, *i.e.*, that ClearPlay must partner with a manufacturer licensed to implement the DVD Specifications or obtain its own license to implement the DVD Specifications. The parties bargained for a limited license—one that covers a right to use Nissim's filtering technology but specifically excluded a right to implement Nissim's patented DVD Specifications—and that is precisely what ClearPlay

obtained. Accordingly, Section 5.6 of the License Agreement does not entitle ClearPlay to a judgment that ClearPlay's 427 Player does not infringe Nissim's patents.

**3.    Collateral Estoppel**

ClearPlay contends that Nissim's claims are barred by collateral estoppel because Nissim's patent claims were fully litigated in the Enforcement Litigation. Not so. Nissim's claim that ClearPlay's 427 Player illegally implements the DVD Specifications was not an issue in the Enforcement Litigation. Accordingly, that claim was not fully and fairly litigated so as to be barred by collateral estoppel. Further, Nissim's patent claims are distinguishable because they allege infringement by the 427 Player—not the 007 Player at issue in the Enforcement Litigation. Even if the Court had concluded that the 007 Player did not illegally implement the DVD Specifications—and again, the Court did not—a question of fact exists (at least on the record before the Court) as to whether the 427 Player now in dispute is "essentially the same" as the 007 Player, such that a finding concerning the 007 Player would also apply to the 427 Player. This alone precludes summary judgment. For both these reasons, Nissim's claims are not barred by collateral estoppel and therefore ClearPlay is not entitled to a judgment in its favor on this basis.

**4.    Mandatory Arbitration**

To the extent Nissim's patent claims allege that the 427 Player does not properly implement the filtering requirements under the License Agreement, ClearPlay is correct that those claims are subject to the requirements of Section 4.6 of the License Agreement. License Agreement, § 4.6; s*ee also* 3/31/09 Order, *Nissim Corp. v. ClearPlay, Inc. et al.,* 04-CV-21140 (S.D. Fla. 2004) (relinquishing jurisdiction as to enforcement of compliance of filters). However, Nissim's patent claims extend beyond the question of whether the 427 Player properly implements the content specifications. The meat of Nissim's claim is—at least for now—that ClearPlay's 427 Player implements the DVD Specifications without a license to do so. Section 4.6 is not an overarching arbitration provision. Nissim's patent claims, therefore, are not subject to the requirements of Section 4.6. Accordingly, ClearPlay is not entitled to judgment in its favor based on the theory that Nissim must arbitrate its patent claims concerning ClearPlay's alleged infringement of the DVD Specifications.

**5.     Res judicata**

The Court will rule on whether *res judicata* bars Nissim's patent claims after considering the supplemental briefs and replies due next month.  (*See* D.E. #73 at ¶¶ 3-5.)

**6.     Right to Obtain License**

ClearPlay contends that it is entitled to obtain a license to implement the DVD Specifications from Nissim under Section 5.4 of the License Agreement because that was the parties' "intent" and "understanding."  (D.E. #51 at 8.)  However, the License Agreement reveals otherwise.  Section 5.4 states that the agreement does not grant ClearPlay rights to any patents "other than the Patents-in-Suit."  License Agreement, § 5.4.[3]  The four patents Nissim alleges ClearPlay is infringing by implementing the DVD Specifications—the '678, '945, '472, and '401 patents—are part of the "Patents-in-Suit" defined in the License Agreement.  *Id.* at § 1.15 (defining Patents-in-Suit as the '678, '945, '472, '013, and '401 patents).  Section 5.4 then goes on to state that ClearPlay may, under some circumstances, obtain a license for "any other Nissim patent," *i.e.*, patents ***other than*** the "Patents-in-Suit."  *Id.* at § 5.4. However, the patents ClearPlay is allegedly infringing by implementing the DVD Specifications are ***not*** patents "other than the Patents-in-Suit."  *Id.*  Rather, they are the same patents.  Under the plain language of Section 5.4, ClearPlay is not entitled to obtain a license to implement the DVD Specifications from Nissim because the DVD Specifications are not covered by patents "other than the Patents-in-Suit."

ClearPlay argues that Nissim's October 12, 2007 letter, allegedly giving ClearPlay an opportunity to buy a license to implement the DVD Specifications, demonstrates that ClearPlay is entitled to buy a license from Nissim today.  Even if this were so, for whatever reason, ClearPlay has not seized the opportunity to acquire a license to implement the DVD Specifications.  However, Nissim's letter does not change the unambiguous language of Section 5.4, which establishes that ClearPlay is only entitled to obtain a license to patents "other than the Patents-in-Suit."  Accordingly, ClearPlay is not entitled to a judgment that Nissim cannot succeed on its patent claims because ClearPlay can simply "obtain" a license to implement the DVD Specifications under the License Agreement.

---

[3] As explained above, this provision does not mean that the License Agreement grants ClearPlay unfettered access to the Patents-in-Suit.

For these reasons, the Court rejects ClearPlay's Motion for Summary Judgment to the extent it relies on the theories dismissed above. The Court will resolve this Motion in its entirety after considering the supplemental briefs and replies on *res judicata* due early next month.

DONE and ORDERED in Chambers, Miami, Florida, May 28, 2009.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record