UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-80535-CIV-HUCK/O'SULLIVAN

NISSIM CORP.,

      Plaintiff

v.

CLEARPLAY, INC.,

      Defendant.

_____/

## CLAIM CONSTRUCTION ORDER

This matter is before the Court upon ClearPlay, Inc.'s request that the Court construe certain claim terms of U.S. Patent No. 5,434,678 ("the '678 patent") and U.S. Patent No. 5,589,945 ("the '945 patent") owned by Nissim Corp. The parties have submitted initial and response briefs, and the Court conducted a *Markman* hearing on March 2, 2010. For the reasons stated in open court and below, the Court finds that the only term that needs to be construed is "content category," which it construes as "a type, group, or class relating to the subject matter (as opposed to the story line) of a video."

### I.    BACKGROUND

#### A.    Summary of the Inventions

The '678 and '945 patents both relate to a video system that uses a viewer's video content preferences to selectively retrieve non-sequentially stored segments of a video program and transmit the selected segments as a seamless video program. The video system can edit out segments of a video that contain content (e.g., graphic violence) that a viewer does not wish to see. The result is a seamless video that contains only those portions of the video that are consistent with the viewer's video content preferences.

The '678 and '945 patents are part of a portfolio of related United States patents owned by Nissim. According to Nissim, its patents cover, among other things, multiple features that are required by industry-adopted specifications—DVD Specifications for Read Only Disc, Part 3 Video Specifications—that are incorporated in all consumer electronic products capable of

playing DVDs. In other words, its patents are essential to practicing the DVD Specifications. Nissim apparently licenses its patent portfolio to manufacturers for the limited purpose of practicing the DVD Specifications.

### B. Procedural Background

Nissim first sued ClearPlay for patent infringement in May 2004 (Case No. 04-CV-21140 or "the 2004 case"). Nissim alleged that ClearPlay was infringing various Nissim patents, including the '678 and '945 patents. The products Nissim accused of infringing were an RCA-branded DVD player with built-in ClearPlay filtering technology, and video segment information called "ClearPlay Filters." During the 2004 case, the parties identified disputed claim terms to be construed, as well as terms the parties agreed did not require construction. (2004 Case, D.E. #164.) The Court conducted a *Markman* hearing and issued two Orders on Claim Construction. (2004 Case, D.E. #170, 188.) The Court construed more than 30 claim terms, including several from the '678 and '945 patents.

The parties resolved the 2004 case shortly before trial in November 2005 when they entered into a Settlement and License Agreement (the "License Agreement"). In the License Agreement, Nissim granted ClearPlay a limited license to "make, have made, use, offer for sale, sell, lease, and/or otherwise dispose of" certain ClearPlay consumer electronic devices and software, limited to the field of use of objectionable content control. The License Agreement specifically excluded a license to Nissim's patents for the purpose of implementing the DVD Specifications. (*See* D.E. #79, Order on ClearPlay's Motion for Summary Judgment at 2-3.)

In May 2008, Nissim filed its complaint for patent infringement in this case. Nissim alleges that a ClearPlay DVD player infringes Nissim's patents because it implements the DVD Specifications without a license for that purpose. More specifically, Nissim claims that because neither ClearPlay nor its current DVD player manufacturer has a license to Nissim's patents for the purpose of implementing the DVD Specifications, ClearPlay's DVD player infringes Nissim's patents.

### C. The Disputed Claim Terms

Although the Court previously construed claim terms from the '678 and '945 patents in the 2004 case, ClearPlay now requests that the Court construe seven additional terms.

Specifically, ClearPlay requests the construction of the following terms: "content category" and "violence category" from the '678 patent; "selecting," "version of said video differing in length than the length of said video," and "responsive" from the '945 patent; and "establishing" and "preferences" from both patents. In addition to the parties' memoranda, the parties submitted a Claim Construction Chart setting forth their respective positions on each claim term. (D.E. #131, Attachment # 1, Claim Construction Chart.) Nissim argues that none of the terms identified by ClearPlay need to be construed, but in the alternative, it has offered its own proposed constructions.

## II.   CLAIM CONSTRUCTION ANALYSIS
### A.   "Content category"
#### 1.   The Parties' Proposed Constructions

| *Nissim's Position* | *ClearPlay's Position* |
|---|---|
| Plain and ordinary meaning applies. | Requires construction. |
| In the alternative, "content category" means "a type, kind, division, group or class relating to the subject matter (as opposed to the story line)." | "Content category" means "a classification that is exclusively associated with a specific type of potentially objectionable content on a video with an assigned label that identifies the specific type of content." |

#### 2.   Discussion

The term "content category" appears in several claims of the '678 patent. Claim 1 is illustrative:

> 1. A video system comprising:
>
> preferencing means for establishing video content preferences responsive to at least one *content category* of possibly unsuitable content, said at least one content category including a violence category;
>
> memory means for storing a video segment map and a video, said video segment map defining a plurality of video segments of said video responsive to said at least one content category;
>
> processing means for automatically selecting video segments from said plurality of video segments responsive to an application of said video content preferences to said video segment map;

3

>random accessing means for retrieving the selected video segments; and
>
>transmitting means for transmitting the retrieved video segments as a continuous video.

'678 Patent col. 26 ll. 46-63 (emphasis added).

The Court construed the term "content" in the 2004 case. The specification of the '678 patent assigns a specific meaning to the term "content," stating that the term refers "principally to the form of expression rather than the story-line." '678 Patent col. 4 ll. 13-15. The Court therefore construed "content" as "the subject matter (as opposed to the story line) of a video, such as the form of expression." (2004 Case, D.E. #170 at 5). Unlike "content," the patent does not assign a specific meaning to the terms "category" or "content category,"[1] but the parties agreed during the 2004 case that the term "category" did not require construction. (*See* 2004 Case, D.E. #164 at 3).

ClearPlay now argues, however, that the combined term "content category" needs to be construed. In light of the specific meaning assigned to the term "content," the Court finds that it would be helpful to construe the term "content category."

ClearPlay argues that the specification and file history require that "content category" be construed as "a classification that is exclusively associated with a specific type of potentially objectionable content on a video with an assigned label that identifies the specific type of content." (Claim Construction Chart at 2.) Nissim argues that ClearPlay's proposed construction impermissibly imports several limitations from the specification and that "content category" should be construed using the meaning that the patent assigns to "content" and the ordinary meaning of "category." The Court agrees with Nissim.

To construe the claim term, the Court looks to the words of the claims themselves, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Generally, a claim is not limited to the embodiments described in the specification

---

[1] In fact, other than in the claims, the phrase "content category" appears only twice in the patent. *See* '678 Patent col. 6 ll. 38-43, col. 10 ll. 62-66.

unless the patentee has demonstrated a 'clear intention' to limit the claim's scope with 'words or expressions of manifest exclusion or restriction.'" *i4i Ltd. v. Microsoft Corp.*, 589 F.3d 1246, 1259 (Fed. Cir. 2009) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

### *"Exclusively Associated With a Specific Type of . . . Content"*

ClearPlay's proposed construction first limits a "content category" to being "exclusively associated with a single type of . . . content." Nothing in the claims requires such a result. ClearPlay argues, however, that the intrinsic evidence requires that a "content category" be associated with only one type of content. ClearPlay first points to a section of the specification that distinguishes "categories" from other disclosed architectures. The specification describes a video editing system based on "flagging" video segments irrespective of the specific nature of the material, and another system based on the MPAA rating system. *See* '678 Patent col. 24 ll. 51-60, col. 25 ll. 65-67. The specification then distinguishes these two systems from a system that uses "category specific video content preferences." *See id.* col. 26 ll. 8-11 (noting that the embodiment based on the MPAA rating system "provides more tailored control than the simpler exclude all flagged segments architecture, but significantly less tailored control than a category specific video content preferences [sic]"). However, nothing in this section prohibits a "content category" from being associated with more than one type of content. "[T]here is no clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction, which is necessary to further narrow the claim language." *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1057-58 (Fed. Cir. 2009) (internal quotations omitted).

ClearPlay next argues that every mention of, or reference to, a "content category" in the specification implicates only a single, specific type of content. It is true that the specification describes embodiments of the invention with categories that are each associated with a specific descriptor. *See, e.g.*, '678 Patent FIG. 2A (depicting a matrix with categories corresponding to "profanity," "violence," "bloodshed," etc.); *id.* col. 11 ll. 7-8 (referring to "the category bloodshed" as depicted in FIG. 4). However, again, the specification does not prohibit a "content category" from being associated with more than one type of content. The Federal Circuit has repeatedly cautioned "that the claims generally should not be narrowed to cover only the disclosed embodiments or examples in the specification." *Linear Tech. Corp.*, 566 F.3d at

1058. Moreover, the specification indicates that the embodiments are merely examples of the invention, and that "the actual descriptive structures and level of complexity utilized may be highly tailored by the producer of a program to reflect the specific content of a program." *See* '678 Patent col. 9 ll. 14-27 (referring to FIGS. 2A-2D). Accordingly, the Court finds that there is not a "clear intention to limit the claim scope."

ClearPlay also argues that if different types of content could be included in the same category, there would be no way to customize playback with respect to just one type of content. However, although the specification describes an embodiment allowing for customization with respect to just one type of content, nothing ClearPlay cites requires that higher level of customization. ClearPlay impermissibly seeks to limit the claims based on embodiments described in the specification.

Finally, ClearPlay argues that the file history supports its construction. "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008).

ClearPlay asserts that Nissim used ClearPlay's construction to distinguish its invention from a prior art reference to obtain the patent. During prosecution, the patent examiner rejected the claims as being anticipated or rendered obvious by a prior art reference that the examiner cited as teaching "video content preferences." To overcome the rejection, the patentee distinguished the prior art reference as relating to "video *programming* preferences," whereas "the present invention establishes a viewer's video *content* preferences." (D.E. #125-6, '678 Patent File History, Response to Office Action of July 13, 1994 at 20 (emphasis added).) ClearPlay concludes that the distinction between the two is that "[w]hereas a category of programming can include multiple types of content, a 'content category' must be unique to a specific type of content." (D.E. #125, ClearPlay's Initial Memorandum at 17.)

The prosecution history does not support ClearPlay's argument. The patentee did not distinguish the prior art reference based on the number of types of content in a "category of programming" and in a "content category." Rather, the patentee's point of distinction was based on the type of preference that each system responded to—programming vs. content—and the

6

corresponding differences in functionality.  The patentee defined "video programming preferences" as referring "exclusively to a viewer's preferences as to specific programs/games (e.g. Sega's 'Sherlock Holmes Consulting Detective'), types of programs/games (e.g. interactive video detective games), or broad subject matter (e.g. mysteries)."  (Response to Office Action of July 13, 1994 at 20.)  He defined "video content preferences" as referring to "a viewer's preferences as to the 'content' (form of expression or explicitness) of a video." (*Id.*)  According to the patentee, the prior art system merely allowed a viewer, using his "video programming preferences," to select a particular program, such as the movie "The Hunt for Red October."  On the other hand, the patentee characterized the present invention as using a viewer's "video content preferences" to customize a selected video to edit out segments that the viewer did not wish to see.  Thus, the prior art reference "provides the viewer the means to request a particular story," whereas the '678 patent provides "the means for the viewer to request how stories are shown."  (Response to Office Action of July 13, 1994 at 21.)  Because the patentee did not distinguish the prior art reference on the grounds that a "content category" must be limited to one specific type of content, the prosecution history does not show any "clear and unmistakable disavowal" of claim scope as ClearPlay contends.

### *"Potentially Objectionable Content"*

ClearPlay's proposed construction also limits a "content category" to being associated with "potentially objectionable content."  The context in which "content category" is used in the claims advises against adding this limitation.  The claims of the '678 patent repeatedly use the term "content category" within the phrase "content category of possibly unsuitable content."  *See* '678 Patent cols. 26-30 claims 1, 4, 7, 8, 10, 11, 13, 15, 18.  This implies that a "content category" is not inherently limited to possibly unsuitable content.  *See Phillips*, 415 F.3d at 1315 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").  Nothing in the specification or the file history requires a different conclusion.  Accordingly, the Court finds that it would be improper to construe "content category" as being limited to "potentially objectionable content."

7

### *"With an Assigned Label that Identifies the Specific Type of Content"*

Finally, ClearPlay's proposed construction limits a "content category" to having an "assigned label that identifies the specific type of content." ClearPlay argues that in every instance that a particular content category is discussed in the specification or the file history, the patentee refers to the category using a label or name that identifies the type of content associated with it. Again, ClearPlay's proposed construction improperly limits the term to the embodiments disclosed in the specification. The Court does not find any basis in the claims, specification, or prosecution history for adding the limitation sought by ClearPlay.

For these reasons, the Court rejects ClearPlay's proposed construction of the term "content category."

### 3.     The Court's Construction

Both parties appear to agree that the Court's construction of the term "content category" should incorporate its previous construction of the term "content." (*Compare* D.E. #128, ClearPlay's Rebuttal Brief at 13 (arguing that the Court's construction of the term "content" should be incorporated), *with* Claim Construction Chart at 2 (setting forth Nissim's proposed construction).) Because the Court finds that the patent and the prosecution history do not assign or suggest a particular meaning for "content category," the Court finds it appropriate to construe "content category" by combining the Court's previous construction of "content" and the ordinary meaning of "category." *See Comaper Corp. v. Antec, Inc.*, --- F.3d ----, 2010 WL 681355, at *3 (Fed. Cir. Mar. 1, 2010) (finding it appropriate to consult a general dictionary definition where a patent did not assign or suggest a particular definition for a term). The word "category" is defined as "[a] type, kind, division, group or class." WEBSTER'S COLLEGE DICTIONARY 214 (1991). Accordingly, the Court construes the term "content category" as "a type, group, or class relating to the subject matter (as opposed to the story line) of a video."

### B.     Other Claim Terms

The other claim terms ClearPlay has requested the Court to construe are "violence category," "selecting," "version of said video differing in length than the length of said video," "responsive," "establishing," and "preferences." The Court finds that these terms are easily

8

understood by a jury and are not affected by the specification or the prosecution history. Therefore, the Court finds that the terms do not need to be construed.

DONE AND ORDERED in Chambers, Miami, Florida, March 19, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record